

FILED
11/1/2023
JXM
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CASE NO.: 1: 23-cv-14662

ALISA LEVYTSKY,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

    Defendants.
_____/

## MOTION TO MODIFY THE PRELIMINARY INJUNCTION
## AND LIFT ASSET FREEZE

NOW COMES real party in interest Mingbin Chen ("054 WAYEEKU-USA" or "Defendant"), hereby moves to modify the preliminary injunction order entered by the Court on October 24, 2023 and to unfreeze Defendant's assets and accounts.

### ARGUMENT

**I. Unfreezing Defendant's Assets and Accounts Is Warranted.**

Defendant moves to modify the preliminary injunction to the extent that it continues to freeze Defendant's funds that have no relation whatsoever to Defendant's alleged infringement. As such, the current freeze, which Defendant moves to modify immediately, falls within the general ban on federal court prejudgment attachment reiterated by the Supreme Court in Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 322 (1999).

In Grupo Mexicano, the Supreme Court explained that any asset freeze must be directly related to, and strictly limited to, the court's ability to fashion an equitable remedy after a trial or decision on the merits:

> Despite Justice Ginsburg's allusion to the 'increasing complexities of modern business relations,' and to the bygone 'age of slow-moving capital and comparatively immobile wealth,' we suspect there is absolutely nothing new about debtors' trying to avoid paying their debts, or seeking to favor some creditors over others — or even about their seeking to achieve these ends through 'sophisticated . . . strategies.' The law of fraudulent conveyances and bankruptcy was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not.

Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 322 (1999) (internal cites omitted).

Courts are limited in their ability to restrain assets-rather than behavior-before judgment. Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). District courts "generally do not have the authority to preliminarily restrain assets where a plaintiff seeks a money judgment." Id. (citing Grupo Mexicano, supra at 331).

The Supreme Court went on to explain that "[e]ven when sitting as a court in equity, we have no authority to craft a 'nuclear weapon' of the law like the one advocated here," as doing so "would literally place the whole rights and property of the community under the arbitrary will of the Judge." Grupo Mexicano at 332. Thus, while it is true that a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," this

power cannot reach "the whole rights and property" of a defendant, but rather must be limited to that portion of the defendant's property that may ultimately be subject to disgorgement. Grupo Mexicano at 326.

A nuclear weapon is precisely what Plaintiff obtained here, which it can then hold to the Defendant's heads while seeking to "negotiate" settlement. The preliminary injunction restrains Defendant from transferring any money or other of Defendant's assets without permission from the Court, and also restrains Amazon, which is not a party here, from transferring any money or other of Defendant's assets, again without prior permission from the Court.

Plaintiff implicitly recognizes that this Court's equitable power to freeze any of Defendant's finances derives from the Lanham Act's equitable remedy of an accounting for an infringer's profits generated by the sale of infringing goods. [Dkt. 20] at paragraph 6 ("The Copyright Act authorizes courts to issue "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.") (citing 17 U.S.C. § 502(a)).

The preliminary injunction, however, goes far beyond the powers of this Court, and indisputably — and unjustly — continues to freeze far more than just the potential profits that Defendant may have earned selling the allegedly infringing product along with countless other unrelated products. In fact, given the boundless nature of Plaintiff's request, the Court itself has no way of knowing how much money the Court has frozen, where it is located (both geographically and in what institution(s)), or what the money or other assets were derived from. This Court therefore has no way of knowing whether the value of what

has been frozen by the Court's exercise of its most potent power bears any relation to the size of this case, or more importantly, the potential size of any future equitable disgorgement of profits. Moreover, there is no mechanism in place for the Court to ever find out — there is nothing in the Court's orders that would require Plaintiff itself to find out how much money has been frozen, and certainly no requirement that Plaintiff ever inform the Court of the true scope of the Court's own order. Rather, the Court has effectively delegated its injunctive powers to the Plaintiff, who is free to use, or abuse, those powers to extract settlements from Defendant, including in amounts that it may not be entitled to and that this Court may never otherwise award.

Plaintiff has not even identified a single Amazon ASIN through which Defendant allegedly sold infringing merchandise, yet it could easily do so, and could use its power to conduct expedited discovery to determine exactly how many allegedly infringing allegedly infringing products Defendant sold, and exactly how much money Defendant generated from those sales. These numbers, should serve as the absolute ceiling on the amount of money that this Court has the power to freeze in order to preserve the Plaintiff's asserted right to an accounting for Defendant's profits generated by their sale of the allegedly infringing product.

Any asset freeze in this case should only reach assets that are related in some way to the allegedly infringing activity, such that the defendant's "ill-gotten gains" may be transferred from the defendant to the plaintiff under a court's equitable powers. See, Klipsch Group, Inc.

v Big Box Store Ltd., 12 CIV. 6283 AJN, 2012 WL 5265727, at *8 (S.D.N.Y. Oct. 24, 2012):

> To determine the proper size of an injunction necessary to preserve Plaintiff's right to an equitable award of profits, the Court adopted the approach taken by Judge Berman in North Face Apparel Corp. v. TC Fashions, Inc., 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006). Applying this approach, a court 'may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity.' Id. (alteration in original) (quoting Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir.1995)).

Other courts have also found that the moving party's request to freeze assets must have some relation to the allegedly wrongful conduct, given that disgorgement, which Plaintiff seeks here, is directed at taking ill-gotten property and returning it to its rightful owner. Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1521 (11th Cir. 1994)("Ordinarily, the general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment.") (internal citations omitted).

In a similar case in the Southern District of New York, Judge Schofield recognized the limits of a federal court's power to order an asset freeze, and limited the preliminary injunction in that case to a freeze of all revenue generated by the sale of the allegedly infringing merchandise, and similarly limited the freeze of the defendant's business to nothing more than a prohibition on the defendant continuing to sell the allegedly infringing goods during the pendency of the litigation. See Klipsch Grp., Inc. v. Big Box Store Ltd., 2012 WL 5265727, at *5 (S.D.N.Y. Oct. 24, 2012) ( "In short, while the Court

agrees with Plaintiff that it has the power to freeze assets to preserve a later award of an equitable accounting, such a freeze should be confined in scope to the likely profits of counterfeiting activity.").

This Court should do the same, and immediately modify the preliminary injunction, at least to the extent it indiscriminately freezes Defendant's assets. Defendant understands that it may ultimately be their burden to show the Court what percentage of their gross revenue from the sale of allegedly infringing products is profit versus cost of goods sold, and does not object to the Court entering a preliminary injunction freezing, for the time being, all of their revenue from the sale of any and all accused merchandise, leaving issues of liability for another day. Defendant objects, however, that *all* of Defendant's money, regardless of source, should be frozen during the pendency of this litigation, including while the parties attempt to negotiate a fair and just settlement.

After reviewing records of Defendant's sales transactions, it is clear that there was only one sale of allegedly infringing merchandise. See **Exhibit A**. Defendant has provided their sales record in good faith and in doing so has met their burden of proving that the assets under freeze were generated from unrelated, non-infringing sales.

If Plaintiff insists on seeking an equitable remedy by disgorging Defendant's profits, it should be entitled to a freeze here of no more than $26.99. If Plaintiff elects to pursue statutory damages, however, then Defendant proposes a limit of no more than $1,000 be frozen.

For the record, Defendant has never sold any allegedly infringing products to anyone in Illinois, and the only sale of the allegedly

infringing product to have ever occurred in the United States took place in Asheboro, North Carolina. See **Exhibit B**. Defendant has met their burden in proving that the frozen assets are from unrelated sales.

## CONCLUSION

For the reasons stated herein, the Court should modify the preliminary injunction and unfreeze Defendant's assets and accounts.

Dated: November 1, 2023            Respectfully submitted,

*/s/ Mingbin Chen*
MINGBIN CHEN
mingbin.chen@outlook.com
Block B, Zhantao
Technology Building
Shenzhen
Longhua District
Guangdong Province
518000
China

**EXHIBIT A**



# EXHIBIT B



# UNREPORTED OPINION IN SUPPORT OF MOTION

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEANUTS WORLDWIDE LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21-cv-05863 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| YINGSHEJI JIATINGYONGPINYOUXIANGONGSI, et al., | ) ) ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff's motion for entry of a preliminary injunction [33] as to Defendant Yingsheji Jiatingyongpinyouxiangongsi is granted, with the modification discussed herein. Enter Preliminary Injunction Order. Speifically, the preliminary injunction against Defendant Yingsheji Jiatingyongpinyouxiangongsi shall include a provision lifting the freeze on the funds in its Amazon account upon the deposit by Defendant Yingsheji Jiatingyongpinyouxiangongsi of $59.98, cash or certified funds, with the Clerk of Court consistent with the procedures in Fed. R. Civ. P. 67 and Local Rule 67.1. Defendant Yingsheji Jiatingyongpinyouxiangongsi's motion for leave to file document under seal [40] is granted. See the accompanying Statement for details.

## STATEMENT

Plaintiff Peanuts Worldwide LLC publishes the long running Peanuts comic strip, which features iconic characters such as Snoopy and Charlie Brown. Plaintiff has several registered trademarks and copyrights related to the Peanuts comic strip and makes available a wide array of licensed Peanuts products such as clothing, playsets, and stuffed toys. According to Plaintiff, the success of the Peanuts brand has resulted in significant counterfeiting. Thus, it has brought the present action against 197 fully interactive e-commerce stores that allegedly offer for sale and sell products using infringing and counterfeit versions of Plaintiff's registered trademarks in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), unauthorized copies of its copyrighted designs in violation of 17 U.S.C. §§ 106, 501, or both.

This Court previously entered a temporary restraining order ("TRO") against all Defendants that, among other things, froze funds held in their e-commerce accounts and prohibited them from using, reproducing, selling, and shipping products bearing any of Plaintiff's trademarks or copyrighted designs. (Dkt. No. 27.) Shortly after Plaintiff moved to convert the TRO into a preliminary injunction (Dkt. No. 33), Defendant Yingsheji Jiatingyongpinyouxiangongsi ("Yingsheji") entered an appearance and filed its opposition to the entry of a preliminary injunction against it. (Dkt. No. 41.) The Court enter the preliminary

injunction against the other Defendants on December 21, 2021. (Dkt. No. 55.) Having now fully considered the briefing and oral argument from the parties, the Court grants Plaintiff's motion for a preliminary injunction against Yingsheji as well, but with a significant limitation.

## I.

Shortly after commencing the present action, Plaintiff filed an *ex parte* motion for a TRO. According to Plaintiff, Defendants' e-commerce stores offer for sale and sell unauthorized Peanuts products to customers in Illinois and employ various tactics to evade Plaintiff's efforts at enforcing its intellectual property rights. Plaintiff argued that it was necessary for the Court to enter the TRO without providing prior notice to Defendants because otherwise Defendants would likely try to evade liability by moving the funds in their e-commerce accounts to bank accounts outside the Court's jurisdiction. The Court granted Plaintiff's motion for a TRO and, among other things, ordered the various online marketplace platforms that host Defendants' e-commerce stores to locate the accounts and funds connected to Defendants' stores and to restrain and enjoin any transfer or disposition of the funds in those accounts.

When Plaintiff moved to convert the TRO into a preliminary injunction, Yingsheji appeared in the action to oppose entry of a preliminary injunction against it.[1] According to its opposition papers, Yingsheji is a Chinese company with three employees. It operates a store on Amazon that sells a variety of products but focuses primarily on kitchen products. According to Yingsheji, it sells only one unauthorized Peanuts product: a Halloween decoration featuring various Peanuts characters and sold under a product name that uses the "Peanuts" trademark. In a declaration submitted in support of its opposition, Yingsheji's representative, Junjie Deng, states that it has only made two sales of that product—one of which was to an account associated with the address for Plaintiff's counsel. The unauthorized Peanuts product was sold at a retail price of $29.99, meaning Yingsheji's total revenue from selling the product was $59.98. This represents a small fraction of Yingsheji's revenue from its other sales in 2021.[2]

As a result of the TRO entered against it, the balance in the account associated with Yingsheji's Amazon store has been frozen. Yingsheji asserts that this freeze has caused it substantial hardship, as it cannot pay its three employees or replenish its inventory for sales of products unrelated to Plaintiff's intellectual property. Further, it claims that the freeze of the tens of thousands of dollars in its account pales in comparison to its $59.98 in sales of the unauthorized Peanuts product. Yingsheji also states that it is no longer selling the product and has removed the listing for the product from its Amazon store. Thus, Yingsheji requests that this Court deny Plaintiff's motion for a preliminary injunction or, at minimum, lift the freeze on its account.

---

[1] In addition to Yingsheji, one other Defendant has appeared to oppose the preliminary injunction but that Defendant's opposition is not addressed here. The Court granted Plaintiff's motion for entry of a preliminary injunction as to the remaining Defendants who have not appeared in the case. (Dkt. No. 45.) The preliminary injunction entered against the non-appearing Defendants substantially mirrors the previously entered TRO. (Dkt. No. 55.)

[2] Yingsheji provides its total revenue, as well as other confidential financial information, in a sealed attachment to the declaration of its corporate representative.

## II.

A party seeking a preliminary injunction has the burden of showing: (1) a likelihood of success on the merits; (2) lack of an adequate remedy at law; and (3) irreparable harm will result if the injunction is not granted. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If the moving party establishes these threshold factors, the Court then balances the harm to the non-moving party if preliminary relief is granted against the harm to the moving party if relief is denied, and further considers the consequences to the public interest of granting or denying relief. *Id.* This equitable balancing process involves a "sliding scale" analysis, "weighting harm to a party by the merit of [its] case," *Cavel International, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007), with the aim "to minimize the costs of a wrong decision," *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "The strength of the moving party's likelihood of success on the merits affects the balance of harms." *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012).

Having already found that Plaintiff satisfied the three threshold factors in granting its motion for a TRO, the Court finds further support for that conclusion in Yingsheji's opposition to Plaintiff's preliminary injunction. Indeed, Yingsheji concedes that Plaintiff will likely succeed on its copyright infringement claim, as the Peanuts Halloween decoration it sold depicted various characters from the Peanuts comic strip. And while Yingsheji pushes back on Plaintiff's claim of trademark infringement, the Court finds that Plaintiff has shown a sufficient likelihood of success on its trademark claims as well. That is because Yingsheji advertised the unauthorized Peanuts product using the Peanuts trademark. *See, e.g.*, *Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 949 (N.D. Ill. 2019) ("[A] protected mark need not appear *on* an item to render it counterfeit; rather, the Lanham Act only requires that the protected mark be used 'in connection with' the sale." (quoting 15 U.S.C. § 1114(1)(a))). Especially considering that the Peanuts trademark was used to sell an item featuring Peanuts characters, it is likely that a customer would incorrectly believe that Yingsheji was selling one of Plaintiff's products. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992) (7th Cir. 1992) ("The 'keystone' of trademark infringement is 'likelihood of confusion' as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers."). And the Seventh Circuit has recognized that trademark and copyright infringement both can cause irreparable injury for which there is no adequate legal remedy. *See, e.g.*, *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001); *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982).

Turning to the balancing of harms, the Court finds that Yingsheji faces little harm from the preliminary injunction insofar as the injunction prohibits Yingsheji from selling or offering for sale unauthorized Peanuts products. Yingsheji has represented to this Court that it has removed the product from its store and does not intend to sell any unauthorized Peanuts product in the future. Moreover, the public interest is served by preventing Yingsheji from making future sales of unauthorized Peanuts products. While the Court finds that Plaintiff is entitled to injunctive relief against Yingsheji, it nonetheless has discretion to determine the appropriate scope of the injunction. *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010). In particular, the Court must ensure that the injunction is "broad enough to be effective" but not

"more burdensome to the defendant than necessary to accord complete relief." *CFPB v. Consumer First Legal Grp., LLC*, 6 F.4th 694, 712 (7th Cir. 2021) (internal quotation marks omitted).

Here, Yingsheji contends that the freeze on the funds in its Amazon account is extremely burdensome and not necessary to provide complete relief to Plaintiff. Although the Court "may not issue an injunction freezing assets in an action for money damages," where, as here, a suit seeks equitable relief, a restraint on assets may be proper. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002). "To exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Luxottica USA LLC v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14 c 9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015) (internal quotation marks omitted).

The Court finds that Yingsheji has provided adequate documentary proof that all but $59.98 of the assets in its Amazon account are unrelated to the infringing activity at issue in this action. Specifically, Yingsheji has provided this Court with delaration from a corporate representative attesting to the numbers in a spreadsheet listing sales figures for all the products offered for sale by its Amazon seller account in 2021. The spreadsheet also includes pictures of the products to demonstrate that none of the other products it offered for sale infringed any of Plaintiff's trademarks or copyrights. Yingsheji's documentary evidence confirms that it made only $59.98 in sales of the unauthorized Peanuts product as opposed to the much greater sales of other, non-infringing products.

By contrast, Plaintiff has presented no evidence in support of keeping the asset freeze in place as to Yingsheji beyond that offered in support of the original TRO, which contains no information specific to Yingsheji's sales of infringing products. Plaintiff's lack of evidence is particularly notable given that the TRO entered by this Court authorized Plaintiff to conduct broad expedited discovery, including discovery concerning "the nature of Defendants' operations and all associated sales" and "a full accounting of Defendants' sales and listing history." (TRO § 2(b), Dkt. No. 27.) Whereas Yingsheji has met its burden of providing documentary proof that all but $59.98 of the funds in its Amazon account are not the proceeds of counterfeiting activity, Plaintiff offers nothing in the rebuttal. Consequently, the Court cannot conclude that leaving the asset freeze in place over the entirety of the funds in Yingsheji's account is necessary to provide Plaintiff with complete relief. Importantly, a freeze is not warranted simply to preserve sufficient funds to satisfy whatever money damages award Plaintiff might ultimately obtain from Yingsheji. *See United States v. Sriram*, 147 F. Supp. 2d 914, 948 (N.D. Ill. 2001) ("Rule 65 does not authorize an injunction to freeze assets merely because a plaintiff fears that by the time a judgment is obtained the assets will have been dissipated."). Moreover, the balance of harms from an injunction containing an asset freeze tilts overwhelmingly toward Yingsheji, as it is left without funds to pay its employees and continue its business operation.

Because an injunction containing a freeze of Yingsheji's assets is not necessary to afford Plaintiff complete relief, the Court will grant Plaintiff's motion for a preliminary injunction without the provision freezing the funds in the account associated with Yingsheji's Amazon store. Given that the $59.98 traceable to Yingsheji's infringing activity constitutes a small fraction of the funds in its account, the Court believes it will be more efficient to have Yingsheji simply

4

deposit that amount with the Clerk rather than to maintain a freeze over that sum in Yingsheji's account. Thus, the Court orders Yingsheji to deposit $59.98 with the Clerk.

Dated: January 24, 2021

_____
Andrea R. Wood
United States District Judge

5